UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIRANDA ALLEN, an individual; and J.M., a minor child, by and through his parent, MIRANDA ALLEN,<br><br>                      Plaintiffs,<br>   v.<br><br>MARTIN BARRATT and J. DOE BARRATT, husband and spouse and marital community composed thereof,<br><br>                      Defendants. | CASE NO. 2:23-cv-00474-TL<br><br>ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES |

      This is an action for damages stemming from a 2019 automobile collision. This matter is before the Court on two motions: Plaintiffs' Motion to Exclude Inadmissible Expert Opinions of Defense Expert Dr. Hatzakis (Dkt. No. 25) and Defendants' Motion to Exclude Expert Testimony of Plaintiffs' Expert Witness Dr. Leah Keylard (Dkt. No. 28). Neither party requested oral argument, and the Court does not believe a hearing is necessary. *See* LCR 7(b)(4). Having reviewed the Parties' briefing and the relevant record, the Court DENIES Plaintiffs' motion and GRANTS Defendants' motion.

I. **BACKGROUND**

This case stems from a rear-end, chain-reaction accident. Plaintiffs allege that, on or about June 16, 2019, Plaintiff Allen was driving northbound on Interstate 5 in Skagit County, Washington, with Plaintiff J.M. as a passenger in her vehicle. *See* Dkt. No. 1-1 ¶¶ 3.1–3.5. While Plaintiff Allen's vehicle was stopped in traffic, Defendant Martin Barratt, also driving northbound on Interstate 5, rear-ended Plaintiff Allen's vehicle, "caus[ing] Plaintiff Allen's vehicle to crash into the rear of the vehicle directly in front of them." *Id.* ¶ 3.5. As a result of the accident, Plaintiff Allen allegedly sustained substantial and permanent injuries. *Id.* ¶ 6.2. Plaintiff J.M. also sustained injuries. *Id.* ¶ 6.6.

The Court recently discussed the procedural posture of this case in a prior Order and will not duplicate that effort here. *See* Dkt. No. 24 at 2. However, several dates bear repeating as relevant to the motions pending before the court: On March 14, 2024, the Parties filed a Stipulated Motion to Continue Trial Date and Pretrial Deadlines, including deadlines for expert discovery. Dkt. No. 14 at 3. On March 15, 2024, the Court granted the request (Dkt. No. 15), and set a new trial schedule (Dkt. No. 16). The Parties' deadline to disclose expert testimony under Federal Rule of Civil Procedure 26(a)(2) was November 4, 2024, and the deadline for rebuttal expert disclosures or reports as well as discovery motions was December 4, 2024. Dkt. No. 16 at 1. Discovery was to have been completed by January 3, 2025, and all motions challenging expert-witness testimony were due February 3, 2025. *Id.* at 1–2. A jury trial in this case is scheduled to begin June 2, 2025. *Id.* at 1.

On February 3, 2025, the Parties timely filed respective motions to exclude expert testimony. First, Plaintiffs filed a motion to exclude the expert testimony of Dr. Michael Hatzakis, Defendants' physiatrist expert. Dkt. No. 25. Later that day, Defendants filed a motion

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 2

to exclude the expert testimony of Dr. Leah Keylard, Plaintiffs' audiologist expert. Dkt. No. 28. The Parties filed responses (Dkt. Nos. 29, 32) and reply briefs (Dkt. Nos. 33, 34).

## II.     LEGAL STANDARD

### A.    Federal Rule of Evidence 702

Federal Rule of Evidence ("FRE") 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule imposes an obligation on the court to act as a gatekeeper and evaluate the admissibility of expert opinion testimony by ensuring that such evidence is both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.* (*Daubert I*), 509 U.S. 579, 589 (1993)); *see also Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) ("We have interpreted [FRE] 702 to require that '[e]xpert testimony . . . be both relevant and reliable.'" (alteration in original) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001))), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc).

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)). Expert opinion "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *Primiano*, 598 F.3d at 565); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting opinion evidence "that is connected to

existing data only by the *ipse dixit* of the expert" should not be admitted, or where there is "simply too great an analytical gap between the data and the opinion proffered").

To assess the reliability of an expert opinion, courts ordinarily look to such factors as: (1) whether the expert's theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential error rate; and (4) whether it enjoys general acceptance within the relevant community. *Est. of Barabin*, 740 F.3d at 463 (citing *Daubert I*, 509 U.S. at 592–94) ("The Supreme Court has suggested several factors that can be used to determine the reliability of expert testimony . . . ."). This is a flexible inquiry, however, and the trial court has discretion to decide how to assess the reliability of opinion testimony based on the particular circumstances of each case. *Primiano*, 598 F.3d at 564 (quoting *Kumho Tire Co.*, 526 U.S. at 150, 152). The court may, but is not required to, hold a "*Daubert* hearing" to determine the relevance and reliability of an expert opinion. *See Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 737 (9th Cir. 2024); *Est. of Barabin*, 740 F.3d at 463–64.

Notably, "[t]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Primiano*, 598 F.3d at 564 (quoting *Daubert v. Merrell Dow Pharms., Inc.* (*Daubert II*), 43 F.3d 1311, 1313 (9th Cir. 1995), *on remand from Daubert I*, 509 U.S. 579 (1993)). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*

**B.     Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c)(1)**

Where a party "fails to provide information . . . as required by [Federal Rule of Civil Procedure] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) 'gives teeth' to the requirements of Rule 26(a)(2)(B) and affords the district court 'particularly wide latitude . . . to issue

1  sanctions' for a party's failure to meet those requirements." *Mansur Props. LLC v. First Am. Title Ins. Co.*, 635 F. Supp. 3d 1116, 1133 (W.D. Wash. 2022) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). Exclusion is the default sanction that Rule 37(c)(1) prescribes for nondisclosure, and "[a]s the Rule plainly states, litigants can escape the 'harshness' of exclusion only if they prove that the discovery violations were substantially justified or harmless." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (quoting *Yeti by Molly, Ltd.*, 259 F.3d at 1106).

### III.  DISCUSSION

**A.  Plaintiffs' Motion to Exclude Dr. Hatzakis**

    **1.  Dr. Hatzakis's Testimony**

Plaintiffs seek to exclude the expert testimony of Dr. Michael Hatzakis as insufficient under Federal Rule of Evidence 702. *See generally* Dkt. No. 25. Dr. Hatzakis, a board-certified physiatrist, is Defendants' expert medical witness. *See* Dkt. No. 32 at 7. Plaintiffs represent that Dr. Hatzakis produced an initial expert report in November 2023 where he opined, *inter alia*, that Plaintiff Allen's injuries had been proximately caused by the motor vehicle collision at issue in this case. *See* Dkt. No. 25 at 6. According to Plaintiffs, Dr. Hatzakis's opinions in the November 2023 report concurred with other expert testimony in the case: "[Dr. Hatzakis] agreed that Ms. Allen suffered from the injuries and damages the other expert and independent medical examiners had found." *Id.* at 7. On November 26, 2024, however, Dr. Hatzakis provided Plaintiffs with an addendum to his original report. *Id.* In the addendum, Dr. Hatzakis diverged from his original findings, opining that "none of Ms. Allen's injuries or damages were caused by the collision, in direct contrast to his first report." *Id.* (underscore in original). In their motion, Plaintiffs argue that "Dr. Hatzakis' opinions are not based in fact, are conclusory and/or speculative, not helpful to the jury and lack adequate foundation." *Id.* at 8.

### 2. Plaintiffs' Grounds for Exclusion

Plaintiffs' motion is long on explanation and short on application. That is, while Plaintiffs dedicate more than five pages to an exposition on the rules governing expert testimony, they limit to two paragraphs their argument as to why these rules demand the exclusion of Dr. Hatzakis as an expert witness. *Compare* Dkt. No. 25 at 9–14, *with id.* at 14.[1] In the two paragraphs that address the specific facts of this case, Plaintiffs assert three bases for excluding Dr. Hatzakis. First, Plaintiffs assert that "Dr. Hatzakis has rendered opinions and conclusions which are contrary to scientifically accepted principles, and are based upon inaccurate and incomplete information." Dkt. No. 25 at 14. Second, Plaintiffs assert that Dr. Hatzakis's opinions and conclusions "are . . . in direct contrast to the one other matter [Plaintiffs' counsel] could find." *Id.* And third, Plaintiffs assert that "Dr. Hatzakis's 'expert opinions' are based upon erroneous assumptions not in the record." *Id.* The Court will address these in turn.

#### a. *Opinions "Contrary to Scientifically Accepted Principles"*

As to the first basis, Plaintiffs do not demonstrate how Dr. Hatzakis's "opinions and conclusions . . . are contrary to scientifically accepted principles." Dkt. No. 25 at 14. For one thing, Plaintiffs' contention here is fundamentally flawed. Opinions and conclusions are intellectual constructs that are dissimilar from, and incomparable to, scientific principles. In and of itself, an opinion or conclusion cannot contradict a scientific principle, unless it is an opinion or conclusion that specifically addresses the merits of that principle. A sum, for example, cannot be "contrary" to, say, arithmetic; an x-ray impression cannot be "contrary" to radiology. To the extent that Plaintiffs intend to assert that Dr. Hatzakis's opinions and conclusions are based on or

---

[1] Moreover, the overwhelming majority of Plaintiffs' discussion is based on inapplicable state law. *See, e.g.*, Dkt. No. 25 at 9–13; *cf. Primiano*, 598 F.3d at 563 (holding that in "diversity case arising out of state tort law, . . . [t]he question whether [expert physician's opinion] is admissible . . . is governed by federal law").

derived from *non*-scientific principles—or, alternatively, are incorrectly based on or improperly derived from scientific principles—Plaintiffs do not sufficiently demonstrate that this is so. Plaintiffs rely on conclusory statements and do not connect their lengthy recitation of the rules of evidence to their cursory discussion of how Dr. Hatzakis's testimony transgresses those rules.

Moreover, Plaintiffs' argument that Dr. Hatzakis's opinions and conclusions are based upon inaccurate and incomplete information also fails. Plaintiffs do not provide any indication that Dr. Hatzakis reviewed any data that were factually wrong or otherwise erroneous. Plaintiffs suggest that Dr. Hatzakis might have based his opinions on an incomplete set of records, but not that those records were, however scant, faulty. *See* Dkt. No. 25 at 8. The fact that an expert might have based their opinion on incomplete records is not sufficient grounds for exclusion under the *Daubert* standard. Rather, such a critique "goes to the weight of his opinions rather than their admissibility." *Pinson v. Prieto*, No. C10-822, 2016 WL 11519338, at *9 (C.D. Cal. Oct. 6, 2016). Plaintiffs may cross examine Dr. Hatzakis regarding the alleged incompleteness of the records that he reviewed. *See id.*; *see also Koger v. Costco Wholesale Corp.*, No. C20-8759, 2023 WL 8188842, at *2 (N.D. Cal. Nov. 27, 2023) ("[Expert's] testimony will not be excluded simply because he did not consider materials that plaintiffs believe to be relevant.").

      b.  ***Opinions "in Direct Contrast" with Other Opinions***

As to Plaintiffs' second basis for excluding Dr. Hatzakis's testimony, it simply does not make sense. Plaintiffs assert that Dr. Hatzakis's opinions and conclusions are "in direct contrast to the one other matter [Plaintiffs' counsel] could find, absent providing an adequate testimony list." Dkt. No. 25 at 14. Taking Plaintiffs' argument at face value, the Court is at a loss to see how Dr. Hatzakis's opinions in an unrelated case have anything to do with his opinions in this one. Unless the facts, circumstances, and damages that were the subject of Dr. Hatzakis's opinions in the other matter are directly comparable to Plaintiff Allen's injuries and damages

here—and Plaintiff does not provide any evidence indicating that they were—then it is not clear how those opinions and conclusions could logically be "in direct contrast" to the opinions and conclusions at issue in this case. As Defendants argue, "Medical treatment, and likewise medical expert opinions, reflect the particular facts and circumstances of each patient. That Dr. Hatzakis found a causal relationship in one MVA case does not mean he must find a similar causal relationship in another . . . ." Dkt. No. 32 at 5.

To the extent Plaintiffs assert that Defendants should have provided more robust disclosure with respect to Dr. Hatzakis's testimony either before or after his deposition (*see* Dkt. No. 34 at 3–4), the Court notes that Plaintiffs had Dr. Hatzakis's list of testimony as early as November 20, 2023, yet waited more than a year—until December 5, 2024, one day *after* discovery motions were due and just 11 days before Dr. Hatzakis's scheduled deposition on December 16, 2024)[2]—to raise the issue of the adequacy of the list of testimony. *See* Dkt. No. 26-1 at 1. Plaintiffs had plenty of time between the issuance of the most recent scheduling order and the lapsing of deadline for discovery motions to try to resolve the issue with Defendants and, if necessary, file an appropriate motion with the Court to obtain any needed information prior to Dr. Hatzakis's deposition. Therefore, any inability to fully examine Dr. Hatzakis at his deposition on account of deficiencies in his list of testimony is attributable to Plaintiffs' delay in timely raising the issue with Defendants.

                    **c.**        ***Opinions Based on "Erroneous Assumptions"***

Finally, as to Plaintiffs' third basis for excluding Dr. Hatzakis's testimony, Plaintiffs do not identify any of the purported "erroneous assumptions" not in the record upon which Dr. Hatzakis's opinions are based. Dkt. No. 25 at 14. As discussed above, it appears that Plaintiffs

---

[2] The Parties met and conferred in late 2023 regarding settlement and formal mediation (Dkt. No. 14 at 2); a new case schedule was entered on April 12, 2024 (Dkt. No. 16).

object to the size of the body of evidence that Dr. Hatzakis reviewed when forming his opinions, not the evidence itself. Such a deficiency can be borne out in cross examination and need not form the basis for exclusion. *See Pinson*, 2016 WL 11519338, at *9.

\* \* \*

Therefore Plaintiffs' motion to exclude Dr. Hatzakis's expert testimony is DENIED.

**B.    Defendants' Motion to Exclude Dr. Keylard**

**1.    Plaintiffs' Rule 26(a)(2) Disclosures**

On November 4, 2024, Plaintiffs made expert disclosures under Rule 26(a)(2). Dkt. No. 28-1 (sealed). Plaintiffs' Disclosure of Expert Witnesses comprised two sections: a section for "Retained Expert Witness(es)" disclosed under Rule 26(a)(2)(B), which covers expert witnesses who are required to provide a written report (*id*. at 5–10); and a section for "Treating Healthcare Providers" disclosed under Rule 26(a)(2)(C), which covers expert witnesses who are not required to provide a written report (*id.* at 10–14). Plaintiffs chose to list Dr. Leah Keylard, an audiologist, as a retained expert witness under Rule 26(a)(2)(B), meaning she was required to provide a written report. *See id.* at 7–8.

**2.    Dr. Keylard's Testimony**

Defendants seek to exclude the expert testimony of Dr. Keylard. *See* Dkt. No. 28 at 1. Dr. Keylard opines on Plaintiff Allen's alleged injuries. *See* Dkt. No. 28-1 at 112–14. Unlike Plaintiffs' other expert reports disclosed under Rule 26(a)(2)(B), Dr. Keylard's report is captioned as a "chart note," not an expert report, and it is only three pages long. *Compare id.* (Keylard expert report), *with id.* at 16–29 (Robert Baker, D.C., expert report), *and id.* at 33–41 (Virtaj Singh, M.D., expert report), *and id.* at 42–75 (Sanford Wright, M.D., expert report). Although Dr. Keylard's report refers to a "[r]eview of medical records as well as described history of noise provided by the patient," the report does not discuss any specific documents or

medical records that informed Dr. Keylard's opinion and provides only a cursory summary of the results of three diagnostic tests. *See id.* at 113–14. Indeed, the "report" reads much like it is labeled: as a healthcare provider's note prepared subsequent to a patient encounter, not a studied synthesis and analysis of diagnoses and data from multiple sources.

Defendants argue that the brevity of Dr. Keylard's report, as well as its lack of specific detail, particularly with respect to the sources upon which Dr. Keylard has based her conclusions, leaves the report short of the requirements that Rule 26(a)(2)(B) prescribes for an expert report. *See* Dkt. No. 28 at 5. Specifically, Defendants assert that the report,

> as a "chart note" and not a full report, . . . only contains the mention of a "[r]eview of medical records as well as described history of the noise provided by the patient." It does not indicate whether Dr. Keylard reviewed the police report, photographs from the collision, the reports from defendant's expert Dr. Hatzakis, or even specify which medical reports were provided to her.

*Id.* (internal citations removed).

Plaintiffs respond that "[t]he data and testing, relied upon by Dr. Keylard in drawing her conclusions, were included in her report." Dkt. No. 29 at 6. Plaintiffs also respond to Defendants' assertions by effectively shifting Plaintiffs' responsibilities under Rule 26(a)(2)(B) to Defendants, stating multiple times that Defendants had ample opportunity to depose Dr. Keylard—and therefore obtain the information missing from Plaintiffs' Rule 26(a)(2)(B) disclosures—yet chose not to do so. *See id.* at 3, 5, 6. Plaintiffs' position is that Defendants' tactical decision not to depose Dr. Keylard absolves Plaintiffs from their deficient disclosures.

//

//

//

//

### 3. Defendants' Grounds for Exclusion

####   a. *Rule 26(a)(2)(B)*

Under Rule 26(a)(2)(B), a party's disclosure of a "witness . . . retained or specially employed to provide expert testimony in the case" must be accompanied by a written report. "The report must contain":

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Defendants assert that Dr. Keylard's report lacks elements (i) and (ii).[3] *See* Dkt. No. 28 at 5–6.

The Court agrees. As Defendants point out, Dr. Keylard's report is a "'chart note' and not a full report." *Id.* at 5. *See also* Dkt. No. 28-1 at 112–14. A "chart note" is not a proper expert report under Rule 26(a)(2).[4] *See Richter v. Romero*, No. C19-5513, 2024 WL 328923, at *1–2 (D. Ariz. Jan. 28, 2024) (distinguishing between treating physician's opinions formed "within the scope of treatment and diagnosis" and a retained expert physician's opinions, and discussing the different Rule 26(a)(2) disclosures required of each).

Indeed, when presented with expert reports similar to that of Dr. Keylard, courts have excluded the testimony as having been insufficiently disclosed under Rule 26(a)(2)(B). In *Verdin*

---

[3] Defendants have withdrawn their original argument that Plaintiff also failed to provide any information regarding Dr. Keylard's compensation, in violation of Rule 26(a)(2)(B)(vi). *Compare* Dkt. No. 28 at 2, *with* Dkt. No. 33 at 2 n.1. There is no list of cases in which Dr. Keylard testified over the previous four years, *see* Fed. R. Civ. P. 26(a)(2)(B)(v), but the Court assumes that because Defendants did not raise this issue, Dr. Keylard has no such testimony to disclose.

[4] Dr. Keylard perhaps could have qualified as a treating physician under Rule 26(a)(2)(C), but Plaintiffs made the choice to proceed with her as a retained expert. Therefore, the Court applies the requirements of retained expert to its analysis.

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 11

*v. Lifecell Corporation*, a medical product-liability case, for example, the court found an expert's Rule 26(a)(2)(B) report deficient where the "report [was] three pages long but the substance of [the expert's] opinion constitute[d] about a page." No. C19-1207, 2021 WL 6751989, at *2 (C.D. Cal. Oct. 28, 2021). The report neglected to "include any proffered theory or explanation as to how" the product at issue caused injury. *Id.* at *3. The court found the report insufficient under Rule 26(a)(2) and struck the expert's testimony under Rule 37(c)(1). *See id.*

Dr. Keylard's report refers to "records relating to [her] independent medical evaluation but d[oes] not provide records of that evaluation," leaving Defendants "[without] the necessary records to counter-designate a rebuttal expert." *Ghiorzi v. Whitewater Pools & Spas, Inc.*, No. C10-1778, 2011 WL 5190804, at *1 (D. Nev. Oct. 28, 2011); *see* Dkt. No. 28-1 at 114. Further, "[r]ather than explain the bases and reasoning for [her] opinions, Dr. [Keylard] has disclosed one-to-two sentence conclusions. This is a far cry from the 'detailed and complete' report required by Rule 26(a)(2)(B)." *Est. of Hill ex rel. Grube v. NaphCare, Inc.*, No. C20-410, 2022 WL 2654975, at *3 (E.D. Wash. July 8, 2022).

For their part, Plaintiffs argue, inappositely, that Dr. Keylard's Rule 26(a)(2)(B) report was sufficient because "Defendant[s] had an opportunity to depose Dr. Keylard and chose not to." Dkt. No. 29 at 5. This is beside the point. The relative sufficiency of a Rule 26(a)(2)(B) report is not enhanced by the opposing party's decision not to depose its author—in fact, the rule contemplates the exact opposite relationship between disclosures and depositions. *See Rapp v. NaphCare, Inc.*, No. C21-5800, 2023 WL 3983662, at *3 (W.D. Wash. June 13, 2023) (explaining that a purpose of an expert report is "to shorten or decrease the need for expert depositions and thus to conserve resources" (quoting *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998))).

In sum, the Court agrees with Defendants that Plaintiffs' Rule 26(a)(2)(B) disclosures for Dr. Keylard were deficient.

### b.   *Rule 37(c)(1)*

Rule 37 describes sanctions associated with violations of the rules pertaining to discovery. Under Rule 37(c)(1),

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). Exclusion under Rule 37(c)(1) "is a self-executing, automatic sanction . . . ." *Mansur Props. v. First Am. Title Ins. Co.*, 635 F. Supp. 3d 1116, 1133 (W.D. Wash. 2022) (quoting *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (cleaned up)) (internal quotation marks removed). In the Ninth Circuit, "the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd.*, 259 F.3d at 1107. Defendants argue that because Dr. Keylard's report was deficient under Rule 26(a)(2)(B), it must be excluded pursuant to Rule 37(c)(1). *See* Dkt. No. 28 at 5–6. The Court agrees.

Plaintiffs argue that Dr. Keylard's testimony should not be excluded, because "[e]xclusionary sanction based on discovery violations are [*sic*] generally improper absent undue prejudice to the opposing side." Dkt. No. 29 at 5. This misstates the law, which provides that "information may be introduced *if the parties' failure to disclose the required information was substantially justified or harmless*." *Yeti by Molly, Ltd.*, 259 F.3d at 1106 (emphasis added). Plaintiffs rely on "Defendant[s'] fail[ure] to depose Dr. Keylard" as demonstrative that the deficiencies in Dr. Keylard's report were substantially justified or harmless. Dkt. No. 29 at 5. But as discussed above, this is not a germane argument with respect to violations under Rule 26 and exclusion under Rule 37. As the Seventh Circuit has held, "the [expert] report must be complete

such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado by Salgado*, 150 F.3d at 741 n.6; *see also Avery v. City of Seattle*, No. C22-560, 2024 WL 2959541, at *6 (W.D. Wash. June 12, 2024) ("[A]n expert cannot salvage a deficient report by supplementing it with later deposition testimony."). The Court thus finds that Plaintiff's deficient Rule 26(a)(2)(B) disclosure with respect to Dr. Keylard was neither substantially justified nor harmless. Moreover, given that discovery is closed, the deadline for dispositive motions has lapsed, and trial begins in approximately two months, the deficiencies cannot be easily remedied without radically reworking this case's longstanding schedule. *See* Dkt. No. 16 (scheduling order); *Jarose v. County of Humboldt*, No. C18-7383, 2023 WL 233880, at *12 ("modifying the scheduling order to reopen discovery . . . would be prejudicial . . . and impede—rather than enhance—the orderly and efficient resolution of this action" (cleaned up)). Accordingly, Dr. Keylard's testimony must be excluded under Rule 37(c)(1).

## IV.   CONCLUSION

Accordingly, it is ORDERED:

(1)   Plaintiff's Motion to Exclude Defense Expert Michael Hatzakis (Dkt. No. 25) is DENIED;

(2)   Defendants' Motion to exclude Dr. Leah Keylard (Dkt. No. 28) is GRANTED.

Dated this 8th day of April 2025.

Tana Lin
United States District Judge